Mingzi "Marjorie" Ouyang (SBN 314334)
Valley & Summit Law P.C.
One Park Plaza, Suite 600
Irvine, CA 92614
Tel: (909) 248-4522
Marjorie.ouyang@valleysummitlaw.com
*Counsel for Plaintiff*
*Guangzhou Zhongbang Trading Limited Company*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| Guangzhou Zhongbang Trading Limited Company, a corporation organized under the laws of the People's Republic of China,<br>Plaintiff,<br>vs.<br><br>FKA Distributing Co., LLC, d/b/a HoMedics, a Michigan Domestic Limited Liability Company,<br>Defendant. | Case No.: 2:26-cv-12972<br><br>COMPLAINT FOR:<br>(1) DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF U.S. PATENT NO.8,407,826 B2;<br>(2) DECLARATORY JUDGMENT OF INVALIDITY OF CLAIMS 1, 4–17, AND 19 OF U.S. PATENT NO. 8,407,826 B2;<br>(3) UNFAIR COMPETITION UNDER 15 U.S.C. § 1125(a); AND<br>(4) INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiff Guangzhou Zhongbang Trading Limited Company ("Plaintiff") brings this action against Defendant FKA Distributing Co., LLC ("Defendant") and alleges as follows:

## NATURE OF ACTION

1. This is an action for a declaratory judgment of non-infringement of U.S. Patent No. 8,407,826 B2 (the "'826 Patent"), titled "Bath Apparatus," issued on April 2, 2013, to inventors Mordechai Lev, Roman S. Ferber, and Stephen Chung, with FKA Distributing Co., LLC, Commerce Township, Michigan, identified on the face of the patent as assignee. Plaintiff seeks a declaration that its Model BE-F1200Pro, BE-F1200ProRC and BE-F2200ProRC (ASIN: B0FJ19PW1H, B0DGL27RX2, B0FJQKQQF5, B0DGKXC4S3, B0G6ZLLGP4, B0G6ZS65V9) Foot Spa Massager (the "Accused Product") does not infringe any valid and enforceable claim of the '826 Patent, either literally or under the doctrine of equivalents. Plaintiff further seeks a declaration that Claims 1, 4–17, and 19 of the '826 Patent are invalid under 35 U.S.C. § 103. A true and correct copy of the '826 Patent is attached as **Exhibit A**.

2. Plaintiff sells foot spa apparatuses to consumers in the United States through Amazon.com. Defendant has caused Amazon to remove Plaintiff's listings by submitting infringement reports under the '826 Patent. Plaintiff's products do not infringe the '826 Patent.

3. Defendant has asserted enforcement of the '826 Patent against Plaintiff in connection with the Accused Product's importation and sale on U.S. e-commerce platforms, including through Amazon's Patent Evaluation Express ("APEX"). Defendant's assertions are not based on valid infringement claims and have caused

Plaintiff a concrete, substantial, and immediate injury by causing product listings to be suspended, disrupting Plaintiff's business, and chilling its lawful commercial activities. After Plaintiff voluntarily dismissed an earlier action in reliance on Defendant's offer to restore Plaintiff's listings, Defendant renewed the same assertions without any new factual basis, causing Plaintiff's inventory in this District to be frozen.

## THE PARTIES

4. Plaintiff Guangzhou Zhongbang Trading Limited Company is a company organized and existing under the laws of the People's Republic of China, with its principal place of business in Guangzhou, Guangdong Province, China. Plaintiff sells the Accused Product, including the Model BE-F1200Pro, BE-F1200ProRC and BE-F2200ProRC (ASIN: B0FJ19PW1H, B0DGL27RX2, B0FJQKQQF5, B0DGKXC4S3, B0G6ZLLGP4, and B0G6ZS65V9) foot spa massager, which is manufactured by Plaintiff's affiliated company, Ningbo Yonglin Supply Chain Management Co., Ltd., in Ningbo, China. Plaintiff sells the Accused Product in the United States through its Amazon.com storefront, Gwon Tech, and has sold the Accused Product on Amazon since 2024.

5. On information and belief, Defendant FKA Distributing Co., LLC is a Michigan limited liability company with a registered office at 3000 N. Pontiac Trail, Commerce Township, MI 48390, United States. Defendant operates an Amazon.com storefront under the seller name "HoMedics USA" and the brand

"Homedics".

## JURISDICTION AND VENUE

6. This action arises under the patent laws of the United States, 35 U.S.C. § 1 *et seq.*; the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202; Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); and the common law of the State of California. This Court has subject-matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a) and 15 U.S.C. § 1121. This Court has jurisdiction over Plaintiff's state-law claim under 28 U.S.C. § 1338(b), because it is a claim of unfair competition joined with substantial and related claims under the patent laws, and under 28 U.S.C. § 1367(a), because it forms part of the same case or controversy as Plaintiff's federal claims.

7. An actual case or controversy exists between Plaintiff and Defendant. Defendant has accused Plaintiff of infringing the '826 Patent through reports submitted to Amazon.com that have caused Amazon to remove Plaintiff's listings. Defendant has not withdrawn the reports and has not provided Plaintiff with a covenant not to sue.

8. This Court has personal jurisdiction over Defendant pursuant to Federal Rule of Civil Procedure 4(k)(1)(A) and California's long-arm statute, Cal. Code Civ. Proc. § 410.10, which permits the exercise of jurisdiction to the full extent allowed by the Due Process Clause. On information and belief, Defendant purposefully directed its patent enforcement activities at this District. The infringement complaints Defendant submitted through Amazon's APEX process, including the renewed complaints, directly targeted the Accused Product and caused Amazon to freeze, and remove

from sale, Plaintiff's inventory of the Accused Product stored at the fulfillment facility located in this jurisdiction. Defendant has also repeatedly and purposefully availed itself of this Court as a forum in which to enforce its rights, having filed at least the following actions in this District as plaintiff: *FKA Distributing Co., LLC v. Merchsource, LLC*, No. 8:20-cv-02378 (C.D. Cal. filed Dec. 18, 2020); *FKA Distributing Co., LLC v. Bear Down Brands, LLC*, No. 8:20-cv-02436 (C.D. Cal. filed Dec. 30, 2020); *FKA Distributing Co., LLC v. Zyllion Inc.*, No. 8:23-cv-01942 (C.D. Cal. filed Oct. 16, 2023); *FKA Distributing Co., LLC v. Joicom Corp.*, No. 5:23-cv-02116 (C.D. Cal. filed Oct. 16, 2023); and *FKA Distributing Co., LLC v. GuruNanda, LLC*, No. 8:24-cv-01035 (C.D. Cal. filed May 13, 2024). Having repeatedly chosen this District as a forum in which to enforce its rights, Defendant cannot reasonably claim surprise or undue burden in being required to litigate here the scope of the patent rights it has asserted against Plaintiff's inventory located in this District. Plaintiff's claims arise out of and relate to Defendant's enforcement of the '826 Patent against the Accused Product in this District, and the exercise of personal jurisdiction over Defendant is reasonable and comports with traditional notions of fair play and substantial justice.

9. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1), (b)(2), (c)(2), and (d). A substantial part of the property that is the subject of this action, namely Plaintiff's inventory of the Accused Product frozen in this jurisdiction, is situated in this District, and a substantial part of the events giving rise to Plaintiff's claims,

including the restraint of that inventory and the resulting injury to Plaintiff, occurred in this District. In addition, because Defendant is subject to personal jurisdiction in this District with respect to this action, Defendant resides in this District for venue purposes under 28 U.S.C. § 1391(c)(2) and (d).

## FACTUAL ALLEGATIONS

### A. The ’826 Patent

10. The ’826 Patent, titled “Bath Apparatus,” was filed on March 18, 2005 (Application No. 11/084,302), claims the benefit of U.S. Provisional Application No. 60/554,474 (filed March 19, 2004), published as US 2005/0235411 A1 on October 27, 2005, and issued on April 2, 2013. Due to USPTO examination delays, the patent received a Patent Term Adjustment of 1,659 days. The adjusted expiration date is October 2, 2029.

11. The ’826 Patent contains three independent claims: Claim 1 (from which Claims 2–17 depend), Claim 18, and Claim 19. Independent Claim 1 requires, among other limitations, “a motor mounted on an underside of the bottom surface” and “at least one therapy attachment removably received on the bottom surface and operably connected to the motor for imparting rotary motion to the therapy attachment and providing therapy to the body part when the body part is placed in contact with the therapy attachment.” ’826 Patent, claim 1. Independent Claims 18 and 19 each require, among other limitations, “a motor mounted on an underside of the bottom surface” and “at least two spaced therapy centers disposed on the bottom surface and

operably connected to the motor, each therapy center including a removable, rotatable therapy attachment for providing therapy to the feet." *Id.*, claims 18, 19. Claim 18 additionally requires "a seal disposed beneath the bath chamber bottom surface to prevent fluid from leaking out of the bath chamber." *Id.*, claim 18. Claim 19 additionally requires "a hood attached to the wall structure and arranged to at least partially cover the bath chamber, wherein the hood is hollow to define a storage area therein arranged to store the therapy attachments when not in use." *Id.*, claim 19.

12. The specification describes the "therapy attachment" (depicted at reference numerals 34, 36, and 37) as a discrete, user-exchangeable functional head, which is removably fitted onto a gear shaft that extends upward through an opening in the bottom surface of the tub. The motor drives this shaft via a gear train, causing the therapy attachment to rotate and contact the user's foot. The specification describes therapy attachments that are keyed to the gear shaft (for example, through a hexagonal fit) so that they rotate together with the gear shaft, without slippage, even when in contact with the user's foot. Those attachments carry fixed raised nodes or a brush, and they can be removed directly and interchanged by the user.

**B. Plaintiff's Accused Product (Model BE-F1200Pro, BE-F1200ProRC and BE-F2200ProRC)**

13. Plaintiff's Model BE-F1200Pro, BE-F1200ProRC and BE-F2200ProRC are foot spa massagers manufactured by Ningbo Yonglin Supply Chain Management Co.,

Ltd in Ningbo, China, Plaintiff's affiliated company. The engineering exploded-view assembly drawing for the Models, which applies to all three Models, identifies the following relevant components: motor (#19 按摩电机), motor-shaft gear (POM, #18 电机轴齿轮), intermediate gear (POM, #20 中间齿轮), gear turntable covers (#09, PP 齿轮转盘上盖), gear turntable bases (#12, POM 齿轮转盘底), gear cover plate lock (#13, PP 齿轮盖板锁扣), gear cover plate (#11, PP 齿轮盖板), massage beads (24 white beads, #08, PP 珠子), and various TPR sealing components (wrap ring #05 包圈, rubber overmold #06 包胶, end plug #21 堵头).

14. The internal drive mechanism of the Accused Products consists of the motor (#19 按摩电机) driving the motor-shaft gear (#18 电机轴齿轮), which meshes with the intermediate gear (#20 中间齿轮). Each massage disc of the Accused Product is an assembly of massage beads (#08 珠子), a gear turntable cover (#09 齿轮转盘上盖), and a gear turntable base (#12 齿轮转盘底), and each massage disc carries its own gear. These gears mesh with one another to transmit drive from the motor and rotate the massage discs. This structure differs from that described in the '826 Patent, in which a multi-stage gear train beneath the bottom surface of the bath chamber drives a gear shaft that extends upward through an aperture in the bottom surface, and the therapy attachment is received on that gear shaft.

15. The 24 massage beads (#08 珠子) are movable massage balls that rest within

the massage discs and are exposed through apertures in the gear cover plate (#11 齿轮盖板) to contact the user's feet. The massage beads are free-rolling and are the components of the Accused Product designed to massage the user's feet. The motor imparts no rotation to the massage beads; their rolling is produced passively by frictional contact with the user's feet. The massage beads therefore receive no rotary motion from the motor within the meaning of the '826 Patent's claims.

16. The gear cover plate (#11 齿轮盖板) can be removed by the user. However, the gear cover plate does not rotate and is not driven by the motor; it is a stationary cover over the massage discs. The gear cover plate carries support rods, a medicine box, and a foot-grinding stone. The massage discs sit beneath the gear cover plate and cannot be removed directly from the bath chamber; the gear cover plate must first be removed before a massage disc can be removed. The massage discs cannot be replaced with other therapy attachments, and the Accused Product has no idle therapy attachments. The gear cover plate does not satisfy the "therapy attachment" limitation because it is not driven by the motor to rotate.

17. Critically, no single component of the Accused Products simultaneously satisfies all three elements of the "therapy attachment" limitation: (1) removably received on the tub's bottom surface, (2) driven by the motor to rotate, and (3) contacted by the user's foot to provide massage. The components the motor drives (the gear assembly and gear turntables #09 齿轮转盘上盖/#12 齿轮转盘底) do not contact the user's

feet; the components designed to massage the user’s feet (beads #08 珠子) receive no rotation from the motor and roll only passively through frictional contact with the user’s feet; the massage discs are not removably received on the bottom surface in the manner the ’826 Patent describes, because they cannot be removed directly from the bath chamber and cannot be interchanged with other therapy attachments; and the gear cover plate (#11 齿轮盖板), which the user can remove, does not rotate.

18. The Accused Products are also foldable units featuring a touchscreen control panel and a removable warming lid (#25 保温盖), which, together with the panel (#3 面板) and the touch screen, can cover the entire bath chamber. The warming lid (#25 保温盖) is separate and fully detachable and is not attached to the wall structure of the bath chamber; it is simply placed over the bath chamber when desired and lifted off entirely when the Accused Products are in use. It is a flat plate rather than a hollow hood and has no storage function. The Accused Products have a touch control panel with a temperature display. The Accused Products have no storage space for therapy attachments, have no idle therapy attachments, and have no components made of transparent material. They do not incorporate “a hood attached to the wall structure and arranged to at least partially cover the bath chamber, wherein the hood is hollow to define a storage area therein arranged to store the therapy attachments when not in use,” as required by independent Claim 19 of the ’826 Patent. By contrast, the ’826 Patent describes a hood attached to the wall

structure, preferably by a hinge, alternatively by another type of attachment such as a snap fit, or formed integrally with it, that is hollow to define a storage area for therapy attachments not in use, together with a lid for accessing that storage area which, in a preferred embodiment, is made of a generally transparent material. The Accused Products also lack features recited in several dependent claims of the ’826 Patent. The Accused Products are controlled through a touch-screen control panel, not a mechanical switch: the main touch-screen switch turns on only the power supply, the motor is turned on by a separate massage function key with three modes, and each function key corresponds to only one specific function. The massage discs are not activated by contact or pressure of the user’s feet; the user must manually press the massage function key. The Accused Products heat the water with a PTC heating block (#14 加热块) that is immersed in, and in direct contact with, the water, and the user’s feet are heated by heat conducted through the heated water. The air outlet tube connects to a single air outlet hole formed in the bottom surface of the bath chamber, and the air then enters the bath chamber through multiple air holes in the gear cover plate (#11 齿轮盖板). The Accused Products have no vibration assembly and no brush attachment. The ’826 Patent, by contrast, describes mechanical switches (42, 44) that control multiple functions (Claims 6-7), therapy attachments activated by pressure of the user’s foot (Claim 8), a heating member arranged to remain uncovered by fluid so that it heats the body part placed directly on it (Claim 13), a heater secured underneath the bath chamber bottom surface that

conducts heat to the water (Claim 14), a plurality of egress holes in the bath chamber bottom surface through which air enters the bath chamber (Claim 15), and a vibration assembly that imparts vibration to the bath chamber (Claim 16).

**C. Defendant's Infringement Assertions**

19. Defendant has filed its first patent infringement complaint against Plaintiff through Amazon's Patent Evaluation Express ("APEX") program, asserting that the Model BE-F1200Pro, BE-F1200ProRC and BE-F2200ProRC (ASIN: B0FJ19PW1H, B0DGL27RX2, B0FJQKQQF5, B0DGKXC4S3, B0G6ZLLGP4, and B0G6ZS65V9) infringe one or more claims of the '826 Patent. As a result of Defendant's assertion, Plaintiff's Amazon product listings were suspended, causing direct and ongoing commercial harm. A true and correct copy of the first APEX complaint is attached as **Exhibit B**.

20. Defendant's infringement assertions are unfounded. Each independent claim of the '826 Patent requires a removable therapy attachment that rotates. As alleged in paragraphs 14–17, no component of the Accused Products satisfies these limitations. Claim 19 further requires "a hood . . . hollow to define a storage area therein arranged to store the therapy attachments when not in use," and, as alleged in paragraph 18, the Accused Models have no such hood.

**D. The Illinois Action and Defendant's Renewed Bad-Faith Takedown Requests**

21. On or about June 29, 2026, Plaintiff filed an action against Defendant in the

United States District Court for the Northern District of Illinois, captioned *Guangzhou Zhongbang Trading Limited Company v. FKA Distributing Co., LLC*, Case No. 1:26-cv-07554 (the "Illinois Action"), seeking a declaratory judgment that the Accused Product does not infringe the '826 Patent. Plaintiff also moved for a temporary restraining order ("TRO") in the Illinois Action.

22. After receiving copies of the complaint and the TRO motion in the Illinois Action, Defendant, on its own initiative, offered to assist Plaintiff in reinstating the ASINs that Amazon had removed as a result of Defendant's APEX complaint.

23. Defendant's unsolicited offer to restore the very listings it had caused Amazon to remove, made promptly after Defendant was confronted with Plaintiff's non-infringement analysis and the prospect of judicial review of its allegations, supports the inference that Defendant knew its infringement allegations to Amazon were baseless and could not succeed on the merits. A true and correct copy of Defendant's email offering to assist Plaintiff in reinstating the ASINs is attached hereto as **Exhibit C**.

24. In reliance on Defendant's offer, and in good faith, Plaintiff voluntarily dismissed the Illinois Action without prejudice pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(i) on or about September 9, 2026.

25. Defendant did not honor that good faith. On or about September 17, 2026, Defendant again submitted takedown requests to Amazon (Complaint ID: 22054748981) asserting the '826 Patent against the same ASINs. Defendant's

renewed requests identified no new facts, no new evidence, and no new infringement theory, and the Accused Product had not changed in any respect relevant to the ’826 Patent. A true and correct copy of the Second APEX Complaint is attached as **Exhibit D**.

26. As a direct result of Defendant’s renewed requests, Amazon again removed the ASINs and froze Plaintiff’s inventory of the Accused Product, including approximately 667 units held at an Amazon fulfillment facility located in this District. Plaintiff cannot sell this inventory while the listings remain removed, and Plaintiff has been notified that the inventory under ASINs B0G6ZLLGP4, B0FJQKQQF5, B0DGL27RX2, and B0FJ19PW1H is scheduled to be disposed of on December 16, 2026. A true and correct copy of the disposal notice is attached as **Exhibit E**.

27. On October 10, 2026, Plaintiff, through counsel, submitted to Amazon a Letter of Non-Infringement in response to Complaint ID 22054748981. The letter attached a claim chart comparing each of Claims 1 through 19 of the ’826 Patent to the Accused Product, explained why the Accused Product does not infringe any claim of the ’826 Patent, either literally or under the doctrine of equivalents, and requested that Amazon reinstate the listings and not dispose of Plaintiff’s inventory. A true and correct copy of the Letter of Non-Infringement is attached as **Exhibit F**.

28. Defendant’s course of conduct, offering to restore Plaintiff’s listings once faced with litigation and then reasserting the identical allegations once that litigation was

dismissed, demonstrates that Defendant is using Amazon's takedown process not to vindicate a good-faith belief of infringement, but to exclude a competitor's non-infringing products from the market while evading judicial review. Absent a declaratory judgment, Defendant will continue to assert the '826 Patent against the Accused Product. Defendant's conduct also renders this case exceptional under 35 U.S.C. § 285.

**E. Prior Art to the '826 Patent**

29. The '826 Patent was filed on March 18, 2005, and claims the benefit of a provisional application filed on March 19, 2004. Because the '826 Patent was filed before March 16, 2013, its validity is governed by the pre-AIA versions of 35 U.S.C. §§ 102 and 103. Each of the references described below was published before March 19, 2004, the earliest priority date to which the '826 Patent could be entitled, and is prior art to the '826 Patent.

30. U.S. Patent No. 3,810,463, published May 14, 1974 (the "'463 Patent"), discloses a rotary foot-treatment apparatus in which a basin receives the user's feet. In the embodiment of its Figure 10, a water-tight housing contains a brush basin having a rotatable side wall and a fixed bottom wall, together with a driving motor, a blower fan, and a heater. The bottom wall comprises four rotary disks carrying brushes in the form of round plates, which are removable. As shown in its Figure 11, the side wall, central column, and rotary disks are driven by a pinion and belt.

31. Chinese Utility Model Patent No. CN 2592159Y, published December 17, 2003

("CN '159"), discloses a foot-massage basin in which the user soaks the feet in warm water while massaging them. Massage blocks with raised projections are formed on, or detachably mounted to, the inner surfaces of the basin bottom and walls, so that the massage blocks are removable and can be adjusted and exchanged.

32. U.S. Patent No. 6,568,000, issued May 27, 2003 (the "'000 Patent"), discloses a foot bath apparatus in which a motor, mounted on the underside of a hood, imparts rotary motion through a multi-stage gear train to removable therapy attachments. Each outer gear of the gear train carries a receiving post, and the therapy attachments are keyed to the posts by a hexagonal recess-and-projection fit so that they rotate with the posts, without slippage, even when in contact with the user's foot. The '000 Patent further discloses a push-push switch for supplying power to the motor, which may alternatively be a multi-function switch allowing multiple modes of activation, such as multiple rotation speeds of the therapy attachments; activation of the therapy attachments by pressure of the user's foot; a heating member located on a portion of the apparatus that remains uncovered by water, for heating the foot placed on it; a rope heating element secured underneath the bath chamber bottom surface to heat the water; an air pump and outlet tubes in communication with a plurality of egress holes in the bath chamber bottom surface for generating air bubbles; a vibration assembly for imparting vibration to the bath chamber; and a bath chamber bottom surface having a plurality of raised nodes.

33. U.S. Patent No. 6,405,390, issued June 18, 2002 (the "'390 Patent"), discloses a

multifunctional foot spa having motor-driven massage means, massage rollers that are rotatable in, and detachable from, recesses in the container baseboard, and, at the front portion of the foot spa, a cabinet that partially covers the container and has a cover, for containing a massage accessory and other accessories.

34. The ’463 Patent and CN ’159 do not appear among the References Cited on the face of the ’826 Patent. True and correct copies of U.S. Patent No. 3,810,463 and Chinese Utility Model Patent No. CN 2592159Y with its English Translation are attached as **Exhibit G** and **Exhibit H** respectively.

**F. Applicable Legal Standards**

35. Patent infringement analysis requires two steps: (1) construction of the asserted claims, and (2) comparison of the properly construed claims to the accused product. *See Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 384–85 (1996); *see also Southwall Technologies, Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1575.

36. To establish literal infringement, “the plaintiff must show the presence of every element or its substantial equivalent in the accused device.” *See Lemelson v. United States*, 752 F.2d 1538, 1551 (Fed. Cir. 1985). Every limitation must be found in accused product, exactly. *Southwall Technologies, Inc.*, 54 F.3d at 1576.

37. Under the doctrine of equivalents, infringement may be found if an accused product performs substantially the same function, in substantially the same way, to achieve substantially the same result as the claimed limitation. *See Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 39–40 (1997). However, the

doctrine of equivalents is limited by prosecution history estoppel: where an applicant narrows a claim during prosecution to overcome prior art, the applicant surrenders equivalents of the surrendered subject matter. See *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 737-738 (2002).

38. Claim construction begins with the claim language itself, informed by the specification and the prosecution history. *See Phillips v. AWH Corp*., 415 F.3d 1303, 1314–17 (Fed. Cir. 2005) (en banc). Terms are given their ordinary and customary meaning as understood by a person of ordinary skill in the art at the time of the invention, read in light of the intrinsic record. *Id.*

**Count I:**

**Declaratory Judgment of Non-Infringement**

**of U.S. Patent No. 8,407,826 B2**

39. Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

40. An actual controversy exists between Plaintiff and Defendant regarding whether the Model BE-F1200Pro, BE-F1200ProRC and BE-F2200ProRC (ASIN: B0FJ19PW1H, B0DGL27RX2, B0FJQKQQF5, B0DGKXC4S3, B0G6ZLLGP4, and B0G6ZS65V9) infringe any valid and enforceable claim of the ’826 Patent. Defendant asserted multiple infringement complaints through the Amazon APEX process, causing concrete and immediate harm to Plaintiff’s business. This controversy is of sufficient immediacy and reality to warrant declaratory relief.

41. The Accused Models do not literally infringe Claims 1, 2–17, 18, or 19 of the ’826 Patent, for at least the following reasons:

(a) **As to Claims 1–17 (Independent Claim 1)**: The Models BE-F1200Pro, BE-F1200ProRC and BE-F2200ProRC (ASIN: B0FJ19PW1H, B0DGL27RX2, B0FJQKQQF5, B0DGKXC4S3, B0G6ZLLGP4, and B0G6ZS65V9) do not contain a “therapy attachment” that is simultaneously (i) removably received on the bottom surface of the tub, (ii) driven by the motor to impart rotary motion, and (iii) contacted by the user’s foot to provide massage. The components the motor drives, the gear assembly and the gear turntables (#09 齿轮转盘上盖/#12 齿轮转盘底), are not designed to contact the user’s feet. The components designed to massage the user’s feet, the free-rolling massage beads (#08 珠子), receive no rotation from the motor; their rolling is produced passively by frictional contact with the user’s feet. The massage discs are not “removably received on the bottom surface” in the manner the ’826 Patent describes: they cannot be removed directly from the bath chamber, but only after the gear cover plate (#11 齿轮盖板) is first removed, and they cannot be interchanged with other therapy attachments. The gear cover plate (#11 齿轮盖板), which the user can remove, does not rotate. No single component performs all three functions and thus Claim 1 is not met. In addition, the Accused Products lack other features the ’826 Patent describes, including

multi-function mechanical switches, activation of the therapy attachments by foot pressure, a heating member arranged to remain uncovered by fluid, egress holes in the bath chamber bottom surface, and a vibration assembly, which provides additional, independent grounds of non-infringement for any dependent claim reciting such features.

(b) **As to Claim 18**: Claim 18 requires "at least two spaced therapy centers disposed on the bottom surface and operably connected to the motor, each therapy center including a removable, rotatable therapy attachment for providing therapy to the feet." The Accused Models do not satisfy this limitation. As alleged in paragraphs 14–17, the motor-driven massage discs cannot be removed directly from the bath chamber, because the gear cover plate (#11 齿轮盖板) must first be removed, and they cannot be replaced with other therapy attachments; the motor-driven gear turntables (#09 齿轮转盘上盖/#12 齿轮转盘底) are not designed to contact the user's feet; the massage beads (#08 珠子), which are designed to contact the user's feet, receive no rotation from the motor; and the gear cover plate (#11 齿轮盖板) does not rotate. Accordingly, no therapy center of the Accused Models includes "a removable, rotatable therapy attachment," and Claim 18 is not met.

(c) **As to Claim 19**: In addition to the non-infringement basis stated in paragraph (b) above, the Accused Products do not include "a hood attached to

the wall structure and arranged to at least partially cover the bath chamber, wherein the hood is hollow to define a storage area therein arranged to store the therapy attachments when not in use". The Accused Products are foldable designs with a separate, fully removable warming lid (#25 保温盖) and a touchscreen control panel, neither of which constitutes a "hood" in the sense required by Claim 19. The removable warming lid (#25 保温盖) is not attached to the wall structure, is not hollow, and has no storage function, and the Accused Products have no storage space for therapy attachments and no idle therapy attachments. This limitation is absent as a matter of structure, and its absence is clear on the face of the product.

42. The Accused Products do not infringe any claim of the '826 Patent under the doctrine of equivalents. With respect to the "therapy attachment" limitation, the Accused Products' separation of functions between motor-driven gear turntables that do not contact the user's feet and free-rolling massage beads that receive no rotation from the motor, housed in massage discs that cannot be removed directly or interchanged, is substantially different from the '826 Patent's single, removable, motor-driven therapy attachment, which is keyed to a gear shaft so that it rotates together with the shaft, without slippage, while in contact with the user's foot. Allowing equivalents to capture such a separated structure would effectively read out the "removably received" and "imparting rotary motion to the therapy attachment" limitations from the claim. See *Warner-Jenkinson Co. Inc. v. Hilton*

*Davis Chemical Co.*, 520 U.S. 17, 29 (It is important to ensure that application of doctrine of equivalents, even as to individual element is not allowed such broad play as to effectively eliminate that element in its entirety).

43. In addition, a range of equivalents broad enough to encompass the Accused Product would ensnare the prior art. A patentee may not obtain, under the doctrine of equivalents, coverage that it could not lawfully have obtained from the U.S. Patent and Trademark Office through literal claims. *See Wilson Sporting Goods Co. v. David Geoffrey & Assocs.*, 904 F.2d 677, 684 (Fed. Cir. 1990). The '463 Patent discloses motor-driven rotary disks seated in the bottom wall of a foot basin and carrying removable brushes, and the '000 Patent discloses removable therapy attachments rotated by a motor through a multi-stage train of intermeshing gears. A hypothetical claim broad enough to read on the Accused Product's gear-driven massage discs would be anticipated by, or obvious over, that prior art.

44. Accordingly, Plaintiff is entitled to a judgment that the Models BE-F1200Pro, BE-F1200ProRC and BE-F2200ProRC (ASIN: B0FJ19PW1H, B0DGL27RX2, B0FJQKQQF5, B0DGKXC4S3, B0G6ZLLGP4, and B0G6ZS65V9) do not infringe, directly or indirectly, any valid and enforceable claim of the '826 Patent, either literally or under the doctrine of equivalents.

**Count II:**

**Declaratory Judgment of Invalidity**

**of Claims 1, 4–17, and 19 of U.S. Patent No. 8,407,826 B2**

45. Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

46. An actual controversy exists between Plaintiff and Defendant regarding the validity of the ’826 Patent. Defendant has asserted the ’826 Patent against the Accused Products through Amazon’s APEX process, and those assertions have caused the removal of Plaintiff’s listings and the restraint of Plaintiff’s inventory. This controversy is of sufficient immediacy and reality to warrant declaratory relief.

47. Claims 1, 4–17, and 19 of the ’826 Patent are invalid under 35 U.S.C. § 103 because the differences between the subject matter of those claims and the prior art are such that the subject matter as a whole would have been obvious at the time of the invention to a person having ordinary skill in the art. Those claims recite no more than the combination of familiar foot-bath elements, each performing its established function, and no more than the predictable use of the prior art elements. See *KSR Int’l Co. v. Teleflex Inc.*, 550 U.S. 398, 416–17 (2007).

48. **Claim 1.** The ’463 Patent discloses an apparatus for bathing the feet having a basin with a bottom wall and an upwardly extending side wall, a driving motor, and rotary disks in the bottom wall that are driven by the motor and carry brushes that treat the user’s feet. CN ’159 discloses therapy elements, in the form of massage blocks, that are removably mounted on the bottom of a foot basin so that they can be adjusted and exchanged. A person of ordinary skill in the art would have been motivated to make the motor-driven therapy elements of the ’463 Patent removably

received on the bottom surface, as taught by CN ’159, to permit their adjustment and exchange, with predictable results. To the extent the ’463 Patent is found not to disclose a motor mounted on an underside of the bottom surface, the ’000 Patent discloses a foot-bath motor mounted on the underside of the surface that carries the rotating therapy attachments, and placing the motor beneath the bath chamber bottom surface would have been an obvious design choice.

49. **Claims 4 and 5**. CN ’159 discloses therapy elements having raised massage projections (Claim 4), and the ’463 Patent discloses rotary therapy elements comprising brushes (Claim 5).

50. **Claims 6–8 and 13–17**. The ’000 Patent discloses a switch for providing power to the motor (Claim 6), which may be a multi-function switch allowing multiple modes of activation of the therapy attachments (Claim 7); activation of the therapy attachments by pressure of the user’s foot (Claim 8); a heating member arranged to remain uncovered by water for heating the foot placed on it (Claim 13); a heater in communication with the bath chamber bottom surface for maintaining the temperature of the water (Claim 14); an air pump and outlet tubes in communication with a plurality of egress holes in the bath chamber bottom surface for generating air bubbles in the water (Claim 15); a vibration assembly for imparting vibration to the bath chamber (Claim 16); and a bath chamber bottom surface having a plurality of raised nodes (Claim 17). A person of ordinary skill in the art would have been motivated to incorporate these conventional foot-bath features, which the ’000

Patent discloses in the same field and for the same purposes, into the apparatus of Claim 1.

51. **Claims 9–12.** The ’390 Patent discloses a foot spa having, at the front portion of the container, a cabinet that partially covers the container, has a cover, and contains massage accessories when they are not in use (Claims 9–11). Forming that cover from a generally transparent material so that the stored accessories can be seen when the cover is closed (Claim 12) is a routine design choice that would have been obvious to a person of ordinary skill in the art and yields only the predictable result of visibility.

52. **Claim 19**. Claim 19 recites a foot bath apparatus having a bath chamber, a motor mounted on an underside of the bottom surface, at least two spaced therapy centers each including a removable, rotatable therapy attachment, and a hollow hood that stores the therapy attachments when not in use. The ’463 Patent discloses multiple spaced, motor-driven rotary disks in the bottom wall of the basin; CN ’159 discloses removable therapy elements on the basin bottom; and the ’390 Patent discloses a cabinet at the front of the foot spa that partially covers the container and stores massage accessories. Claim 19 would have been obvious over the ’463 Patent in view of CN ’159 and the ’390 Patent, and further in view of the ’000 Patent to the extent discussed above with respect to Claim 1.

53. Accordingly, Plaintiff is entitled to a judgment declaring Claims 1, 4–17, and 19 of the ’826 Patent invalid.

**Count III:**

**Unfair Competition Under 15 U.S.C. § 1125(a)**

54. Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

55. On information and belief, Plaintiff and Defendant are competitors. Defendant markets and sells HoMedics-branded foot spa massagers to consumers through Amazon.com, including through its "HoMedics USA" storefront, and those products compete with the Accused Product for the same customers.

56. In its APEX complaint and in its renewed takedown requests submitted on or about September 17, 2026, Defendant represented to Amazon that the Accused Product infringes the '826 Patent.

57. Defendant's representations were false or misleading statements of fact about Plaintiff's goods. The Accused Product does not infringe any claim of the '826 Patent, as alleged in Count I.

58. Defendant's representations were made in commercial advertising or promotion. They were commercial speech made by a competitor of Plaintiff for the purpose of influencing consumers to buy Defendant's goods rather than Plaintiff's, by causing the Accused Product to be removed from the marketplace in which both parties sell.

59. Defendant made its representations in bad faith, as alleged in previous paragraphs above.

60. Defendant's representations were made in interstate commerce. They concerned

products imported into and sold throughout the United States through Amazon.com, and they caused the restraint of Plaintiff's inventory in California.

61. Plaintiff has been and is likely to be injured as a result of Defendant's false representations, including through lost sales of the Accused Product and injury to the goodwill and commercial reputation associated with the Accused Product.

62. Plaintiff is entitled to injunctive relief under 15 U.S.C. § 1116 and to recover Defendant's profits, Plaintiff's damages, and the costs of the action under 15 U.S.C. § 1117(a). Because Defendant acted in bad faith, this is an exceptional case warranting an award of reasonable attorneys' fees under 15 U.S.C. § 1117(a).

**Count IV:**

**Intentional Interference with Prospective Economic Advantage**

63. Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

64. Plaintiff had existing economic relationships with Amazon, through whose marketplace Plaintiff sells the Accused Product, and with the Amazon customers who purchase the Accused Product. These relationships carried a probability of future economic benefit to Plaintiff. Before Defendant's renewed takedown requests, the Accused Product had been reinstated and was available for sale on Amazon.com under ASINs B0FJ19PW1H, B0DGL27RX2, B0FJQKQQF5, B0DGKXC4S3, B0G6ZLLGP4, and B0G6ZS65V9.

65. Defendant knew of these relationships. Defendant identified the Accused

Product by ASINs in its APEX complaint and in its renewed takedown requests. Defendant also received the complaint and TRO motion in the Illinois Action, which described Plaintiff's Amazon sales of the Accused Product and the harm caused by the removal of its listings, and Defendant itself offered to assist Plaintiff in reinstating those listings.

66. Defendant engaged in intentional acts designed to disrupt these relationships. On or about September 17, 2026, after Plaintiff dismissed the Illinois Action in reliance on Defendant's offer, Defendant submitted renewed takedown requests to Amazon asserting the '826 Patent against the same ASINs, knowing that Amazon would remove the listings and restrain Plaintiff's inventory in response. On information and belief, Defendant did so to exclude a competitor's non-infringing products from the Amazon marketplace.

67. Defendant's conduct was wrongful by a legal measure independent of the interference itself. Defendant's renewed takedown requests represented to Amazon that the Accused Product infringes the '826 Patent. That representation was false, for the reasons alleged in Count I, and it constituted a false or misleading representation of fact in commercial advertising or promotion in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), as alleged in Count III.

68. Defendant made its infringement assertions in bad faith. The assertions were objectively baseless: no reasonable patentee could realistically expect to prove that the Accused Products infringe the '826 Patent, because each independent claim

requires a removable therapy attachment that rotates, and, as alleged in previous paragraphs, no component of the Accused Products satisfies that limitation. The assertions were also made in subjective bad faith, as shown by, among other things: (a) Defendant's unsolicited offer to restore Plaintiff's listings once Defendant was confronted with Plaintiff's non-infringement analysis and the prospect of judicial review; (b) Defendant's renewal of the identical assertions after the Illinois Action was dismissed, without any new facts, evidence, or infringement theory, and without any change in the Accused Product relevant to the '826 Patent.

69. Because Defendant's assertions were made in bad faith and the infringement concerns were objectively baseless, this claim is not preempted by federal patent law. See *Globetrotter Software, Inc. v. Elan Computer Grp., Inc.*, 362 F.3d 1367, 1374–77 (Fed. Cir. 2004).

70. Defendant's conduct actually disrupted Plaintiff's relationships. As a direct result of Defendant's renewed takedown requests, Amazon removed the ASINs and froze Plaintiff's inventory of the Accused Product, including the inventory held in this District.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in its favor and against Defendant as follows:

(1) A judgment that the Models BE-F1200Pro, BE-F1200ProRC and BE-F2200ProRC (ASIN: B0FJ19PW1H, B0DGL27RX2, B0FJQKQQF5,

B0DGKXC4S3, B0G6ZLLGP4, and B0G6ZS65V9) do not infringe, and have not infringed, any valid and enforceable claim of U.S. Patent No. 8,407,826 B2, either literally or under the doctrine of equivalents;

(2) A judgment that Claims 1, 4–17, and 19 of U.S. Patent No. 8,407,826 B2 are invalid under 35 U.S.C. § 103;

(3) A permanent injunction restraining Defendant and its officers, agents, and employees from asserting or threatening to assert the ’826 Patent against Plaintiff’s importation, marketing, distribution, offer for sale, or sale of the Models BE-F1200Pro, BE-F1200ProRC and BE-F2200ProRC (ASIN: B0FJ19PW1H, B0DGL27RX2, B0FJQKQQF5, B0DGKXC4S3, B0G6ZLLGP4, and B0G6ZS65V9), including through Amazon’s APEX process or any similar program, and requiring Defendant to withdraw, and to notify Amazon in writing that it withdraws, all infringement complaints and takedown requests it has submitted regarding the Accused Product;

(4) An award of compensatory damages in an amount to be proven at trial on Counts III and IV;

(5) An award of Defendant’s profits, Plaintiff’s damages, and costs under 15 U.S.C. § 1117(a), and a finding that this is an exceptional case warranting an award of reasonable attorneys’ fees under 35 U.S.C. § 285;

(6) An award of punitive damages under California Civil Code § 3294 on Count IV;

(7) An award of pre-judgment and post-judgment interest;

(8) An award of Plaintiff's costs of suit; and;

(9) Granting such other and further relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable under Federal Rule of Civil Procedure 38(b).

Dated: November 4, 2026

Respectfully submitted
By: /s/*Mingzi "Marjorie" Ouyang*
Mingzi "Marjorie" Ouyang
CA SBN 314334
**Valley & Summit Law P.C.**
One Park Plaza, Suite 600
Irvine, CA 92614

*Attorney for Plaintiff*
*Guangzhou Zhongbang*
*Trading Limited Company*